# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

No. 18-1242V
Filed: February 16, 2021
UNPUBLISHED

<span style="color:red">**REISSUED FOR PUBLICATION**
APR 2 2021
OSM
U.S. COURT OF FEDERAL CLAIMS</span>

| | |
|---|---|
| ELIZABETH SALAZAR, parent of D.R., a minor,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>     Respondent. | Special Master Horner<br><br>Dismissal Decision; Human Papillomavirus Vaccine; Influenza Vaccine; Spinocerebellar Ataxia Type 7 (SCA-7); Cerebellar Ataxia; Order to Show Cause; Insufficient Proof; Failure to Prosecute |

*Elizabeth Salazar*, pro se, Houston, TX, for petitioner.
*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION[1]

On August 20, 2018, petitioner filed this claim on behalf of her minor son, D.R., alleging that a human papillomavirus ("HPV") vaccine received on August 21, 2015, caused him to suffer permanent blindness and that an influenza ("flu") vaccine, received on October 20, 2015, caused him neurological injuries that lead to his diagnosis of cerebellar ataxia. (ECF No. 1.)[2]  For the reasons discussed below, this petition is now dismissed.

### I.  Procedural History

This case was originally assigned to Special Master Sanders. (ECF No. 5.) Special Master Sanders held an initial status conference and gave petitioner an opportunity to retain counsel to represent her in this case. (ECF No. 9.)

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] "ECF No." refers to the location of each document on the court's electronic docket for this case.

On November 14, 2018, an Order to Show Cause was issued following petitioner's missed deadline.  (ECF No. 13.)  Thereafter, a second Order to Show Cause was issued following petitioner's failure to provide a response to the first Order to Show Cause.  (ECF No. 14.)  A status conference was held on December 20, 2018.  Petitioner reported that she was proceeding *pro se.* (ECF No. 15.)  Special Master Sanders explained the medical records that petitioner needed to file in order to pursue her claim and petitioner agreed to file such records.  (*Id.*)  Between February 1, 2019 and March 8, 2019, petitioner filed medical records to support her claim.  (ECF Nos. 19-21.)

On August 28, 2019, this case was reassigned to my docket.  (ECF No. 25.)  Upon my review of the records, I held an initial status conference on November 22, 2019.  (ECF No. 31.)  Based on my review, I explained to petitioner that she may have a difficult time proving her claim based on D.R.'s medical history and advised that petitioner will eventually need an expert opinion in order to proceed with her claim.  However, I ordered respondent to provide his Rule 4(c) report to better assist petitioner in understanding how best to proceed.  (*Id.*)  Respondent filed his Rule 4(c) report on February 11, 2020,[3] recommending against compensation and outlining the reasons therein.

Thereafter, I ordered petitioner to file an expert report to support her claim by no later than April 24, 2020.  (ECF No. 36.)  However, on March 9, 2020, petitioner indicated that she did not receive my order setting this deadline and a courtesy copy of the order was sent to petitioner, maintaining the April 24, 2020 deadline.  (ECF No. 37.)  On April 23, 2020, petitioner contacted my chambers, indicating that she was having a difficult time meeting her deadline due to the coronavirus outbreak and quarantine.  Accordingly, I extended petitioner's deadline to file an expert opinion to support her claim to August 7, 2020.  (ECF No. 39.)

Petitioner allowed this August 7, 2020 deadline to lapse without any filing and did not otherwise file any expert report.  I held a status conference on August 26, 2020 to discuss the appropriate next steps with petitioner.  (ECF No. 41.)  Petitioner indicated she wished to proceed with a report from one of D.R.'s treating physicians, Dr. Guillory, and I set petitioner's filing deadline at the end of November 2020.  I specifically confirmed with petitioner that she agreed the November 30, 2020 deadline was reasonable in light of the Covid-19 pandemic and her current circumstances.  I further explained that I had allowed petitioner a generous period of time to seek expert support, but this case cannot be allowed to remain pending indefinitely and stressed the importance of meeting deadlines. I cautioned that failure to meet the November 30, 2020 order would result in an Order to Show Cause.  Petitioner allowed this deadline to lapse without completing her filings.

---

[3] The report was filed on January 31, 2020; however, the amended certificate of service was filed on February 11, 2020.

On December 4, 2020, an Order to Show Cause was issued that allowed petitioner one final chance to file an expert opinion to support her claim. (ECF No. 42.) I explained that petitioner's deadline of February 4, 2021 would be her last opportunity to file an expert opinion to support her claim and if one is not filed, petitioner's claim will be involuntarily dismissed. (*Id.*) On January 12, 2021, petitioner contacted chambers via telephone and indicated that she anticipated submitting a letter from Dr. Guillory by the deadline. However, petitioner allowed the February 4, 2021 deadline to lapse without any filing and to date has not filed an expert report or otherwise contacted chambers.

## II. Discussion

In general, to receive compensation in the Vaccine Program, a petitioner must prove either (1) that the vaccinee suffered a "Table Injury" – *i.e.*, an injury falling within the Vaccine Injury Table – corresponding to a covered vaccine, or (2) that the vaccinee suffered an injury that was actually caused by a covered vaccine. *See* §§ 13(a)(1)(A) and 11(c)(1). Petitioner has not alleged any Table Injury. Nor does my review of the records reveal any such injury.

To satisfy her burden of proving causation in fact, petitioner must show by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). The Vaccine Act also limits compensation only to those cases that are supported by either medical records or the opinion of a competent physician. The Vaccine Act states with regard to a finding that petitioner can recover for his injury that: "The special master or court may not make such finding based on the claims of a petitioner alone, unsubstantiated by medical records or medical opinion." 42 U.S.C. § 300aa-13(a)(1).

D.R.'s medical history is well summarized in respondent's Rule 4 Report. Upon my review of the medical records filed in this case, I do not see where any of D.R.'s physicians attributed his condition to any of his vaccinations. This claim alleged that D.R.'s condition began prior to his August 21, 2015 HPV vaccination, but was aggravated by both that vaccination and an influenza vaccination administered October 20, 2015. However, the medical records suggest that D.R.'s diagnosis is Spinocerebellar Ataxia Type 7 (SCA-7) which his physicians have noted to be a progressive genetic condition. Dr. Parnes, D.R.'s treating pediatric neurologist at the Pediatric Movement Disorders Clinic at Texas Children's Hospital, explicitly opined on March 7, 2018 that "[D.R.]'s condition is related to a genetic variant that is known to cause SCA7, in the absence of any trigger." (ECF No. 21, p. 234.) There is some indication in the records that a Sherry Durrett suspected D.R.'s vaccines to have contributed to his condition via heavy metal toxicity; however, Ms. Durrett is D.R.'s

chiropractor and that opinion is far outside her area of qualification and not credible.[4] (ECF No. 19, pp. 293-300.)  Presented with Ms. Durrett's theory, Dr. Akbar, D.R.'s pediatric neurologist at The Houston Institute of Neurology for Kids, reiterated that D.R.'s SCA7 is genetic and that the etiology is otherwise unknown.  (ECF No. 19, p. 304.)  Petitioner has represented that Dr. Guillory is willing to support vaccine-causation; however, she has not filed any report by him.[5]

Pursuant to Vaccine Rule 8(a), the special master "will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties."  Vaccine Rule 8(d) expressly authorizes the special master to decide a case based on the written record without holding an evidentiary hearing.[6]   In this case, the medical records do not contain preponderant evidence indicating that D.R.'s condition was vaccine-caused, aggravated, or in any way vaccine-related.  Nor has petitioner filed any expert medical opinion to support her allegations.

Additionally, under Vaccine Rule 21(b), the special master may dismiss a petition for failure of the petitioner to prosecute or comply with any order of the special master. In this case, petitioner was given multiple opportunities to address the issues raised in my previous orders and in respondent's Rule 4 Report responding to her allegations. Moreover, I have already provided petitioner a generous one-year period, since February 2020, within which to secure an expert opinion.  Yet, petitioner has been unable to comply with the order to file an expert report and has, in fact, repeatedly failed during the pendency of this case to respond to the filing deadlines set by court orders.

I am sensitive to the fact that petitioner previously indicated that she has had difficulty securing an expert report due to her own personal circumstances related to the Covid-19 pandemic.  Notably, however, while these circumstances could justify a motion for extension of time, they do not excuse petitioner's repeated disregard of her

---

[4] This opinion is outside of Ms. Durrett's area of qualification in multiple respects. First and most basically, she is not a medical doctor. Nor does the record reflect that she has any qualification in neurology, genetics, or toxicology.

[5] The medical records filed in this case do contain some records by Dr. Guillory, but these records relate only to treatment, consisting mainly of prescription slips, consent forms, receipts, and lab results.  (ECF No. 20, pp. 13-33; ECF No. 19, pp. 322-25.)  One record indicates Dr. Guillory's opinion that D.R.'s condition, though progressive, is aggravated by environmental toxicity. (ECF No. 20, p. 33.)  However, neither it nor any other record by Dr. Guillory expresses any causal opinion by Dr. Guillory as to vaccines. Moreover, standing alone this record lacks sufficient detail and substantiation to be credible. Apart from being an M.D., Dr. Guillory's specific qualifications are not disclosed by the existing record.

[6] Special masters "must determine that the record is comprehensive and fully developed before ruling on the record."  *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020) (citing *Simanski v. Sec'y of Health & Human Servs.*, 671 F.3d 1368, 1385 (Fed. Cir. 2012); *Jay v. Sec'y of Health & Human Servs.*, 998 F.2d 979, 983 (Fed. Cir. 1993.)); *see also* Vaccine Rule 8(d); Vaccine Rule 3(b)(2).  The parties must have a full and fair opportunity to present their case and develop a record sufficient for review.  *Id*.  Based on the above-described procedural history, I conclude that petitioner has had a full and fair opportunity to develop a record.

deadlines.  Moreover, petitioner has been allowed a generous period of time to seek out an expert report and I specifically confirmed with petitioner during our last status conference that she felt her deadline was reasonable.  Additionally, I provided petitioner clear notice in my December 4, 2020 Order to Show Cause that her case was at risk for involuntary dismissal.  She subsequently indicated to chambers on January 12, 2021, that she anticipated meeting her Order to Show Cause deadline.

### III.     Conclusion

This case is now **DISMISSED** both for failure to prosecute and for insufficient proof.  The clerk of the court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.